Filed 9/14/20  P. v. Martin CA4/1
Opinion after vacating opinion filed on 6/23/20

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D075236 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD275583) |
| CARL ANTWAN MARTIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Peter L. Gallagher, Judge.  Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

The District Attorney brought charges against Carl Martin for selling about one-half gram of cocaine for $20 while in the buyer's vehicle.  The jury found Martin guilty

of selling the cocaine (Health & Saf. Code, § 11352),[1] but could not reach a verdict on the second count, possessing the same cocaine for sale (§ 11351). Martin admitted a strike prior allegation, but the court dismissed the strike in the interests of justice. The court sentenced Martin to the four-year middle term on the sales offense.

Martin contends the court erred in instructing the jury that a defendant can be found guilty for selling a substance if he had control over the substance or the right to control it, even if he did not "actually hold or touch" the item. (CALCRIM No. 2300.) Martin contends this portion of the instruction was inapplicable to the facts of his case, and caused the jury to improperly believe it could convict him of selling the drugs even if his only participation was standing outside the vehicle serving as a lookout. We determine there was no prejudicial error, and affirm.

FACTUAL AND PROCEDURAL SUMMARY

Two officers in a police car drove past a Mercedes vehicle parked in front of a home. They saw two individuals sitting inside the Mercedes: Martin (in the driver's seat) and Carlton Blue (in the passenger's seat). The officers recognized Blue as a person with an active felony arrest warrant. When Martin and Blue saw the officers, they got out of the car and walked quickly into the home (Blue's residence).

The officers called for an undercover officer, and about 15 minutes later Detective Kenneth Fortier responded in an unmarked vehicle. During his surveillance, Detective Fortier saw a sedan vehicle drive past the Mercedes, make a U-turn, and park in front of

---

[1] Further statutory references are to the Health and Safety Code.

the Mercedes. A male (later identified as Ricardo Rodriguez) got out of the sedan, and walked toward the house. Shortly after, Detective Fortier saw Rodriguez walk outside of the house with Martin and Blue. Detective Fortier recognized Blue from prior contacts, but did not recognize Martin. He did not see anything in the pockets of the three men, nor did he see any of the men holding anything.

Detective Fortier testified that Rodriguez entered the sedan on the driver's side, and Martin entered on the front passenger side. Detective Fortier could not see what they were doing in the car. He testified Blue remained outside the vehicle, "standing by the trunk of the car like looking up and down the street." Blue and Martin were wearing different color jackets/tops, but had similar appearances and body types; they are both the same race; both had long hair pulled back.

Detective Fortier testified that about three or five minutes later, Martin left the sedan and walked to the Mercedes, and got into the Mercedes's driver's seat. Blue got into the Mercedes's front passenger seat. Rodriguez then drove his sedan westbound, and Martin made a U-turn and drove eastbound.

A police vehicle pulled over the Mercedes. One of the officers saw Blue shove something in the back of his pants. When the officers searched the back of Blue's pants, they found a baggie containing 24.10 grams of cocaine. The officers also found a very small amount of cocaine in a small baggie in one of Blue's pockets. One of Blue's checks was found on the front passenger floorboard. The check was in the amount of $700, but did not have a payee name on it.

Martin appeared nervous, but officers did not find any drugs on him, or any sales paraphernalia in the car (owned by his wife). They found $462 in cash inside the center console. Martin admitted it was his cash.

Meanwhile another officer followed Rodriguez's car to a nearby parking lot. After Rodriguez parked and exited the vehicle, the officer patted Rodriguez down and found a small baggie containing .43 grams of cocaine in one of Rodriguez's pockets. The baggie resembled the baggie found in Blue's pocket.

Officers took Rodriguez to the police station, and a different detective interviewed him. During the videotaped interview (shown to the jury), Rodriguez said he stopped by to talk to Blue, who he knew since they were young. He said he purchased the cocaine for $20 from the other person, who he did not know. When the detective asked him if he got in the car with anyone, Rodriguez first said Blue, but then immediately said it was the other person. He said that this other person showed him cocaine when they were outside of the car, and then he bought some. When the detective questioned Rodriguez to determine whether it was Blue or the other man who got in the car with him, Rodriguez said it was the other man. Rodriguez was issued a citation for cocaine possession and was released that evening.

Martin was arrested and charged with selling the cocaine to Rodriguez.

At trial, Rodriguez testified he knew Blue because they had grown up together playing sports, but he did not know Martin before that day. He claimed he did not remember any of the events occurring the day of his arrest, and denied purchasing cocaine from Martin.

4

An expert (a narcotics detective) testified that .43 grams of cocaine would normally sell on the street for about $40. In response to the prosecutor's question, the expert testified that when people sell drugs together, it is common for them to take different roles within the transaction.

Martin did not testify, but called his employer, a subcontractor, who testified that Martin had worked for him during the past four or five years on various construction jobs. The employer testified that on the day of the incident, he and Martin had completed a job, and at about 2:00 p.m., he paid Martin $480 in cash.

*Jury Instructions*

Without objection, the court instructed the jury on the elements of the cocaine sale offense (Count 1; § 11352) using CALCRIM No. 2300. The instruction began:

> "To prove him guilty of this crime, the People must prove: One, Mr. Martin sold, furnished, or gave away, a controlled substance; Two, Mr. Martin knew of its presence; Three, Mr. Martin knew of the substance's nature or character as a controlled substance; Four, the controlled substance was cocaine; and, Five, the controlled substance was in a usable amount. [¶] Selling for the purpose of this instruction means exchanging a controlled substance for money, services, or anything of value."

The last paragraph of this instruction (the paragraph challenged on appeal) stated:

> "A person does not have to actually hold or touch something to sell, furnish, administer, transport it for sale, import, give it away. It is enough if the person has control over it or the right to control it, either personally or through another person."

This is an optional bracketed paragraph in CALCRIM No. 2300.

The court also instructed the jury on the possession-for-sale charge (Count 2; § 11351) using CALCRIM No. 2302, which identifies similar elements except it requires

5

proof of unlawful possession and a specific intent to sell. This instruction also included the same paragraph that a person does not have to "actually hold or touch something" to be guilty of the crime.

*Closing Arguments*

During argument, the prosecutor's theory was that Rodriguez unexpectedly stopped by Blue's home, and at "the spur of the moment" Martin decided to sell him a small amount of cocaine for $20. The prosecutor asserted that this transaction occurred in Rodriguez's sedan during the three to five minutes while Detective Fortier was observing the scene.

The prosecutor maintained that she proved these facts through the testimony of Detective Fortier and the videotaped Rodriguez interview. She told the jury that Count 1 (sale offense, § 11352) and Count 2 (possession-for-sale offense, § 11351) were "very similar," and the "biggest difference" is that "Count 1 is a general intent crime, meaning we don't have to show you defendant intended to do anything, but Count 2, . . . we actually have to prove . . . that Mr. Martin intended to sell the drugs that he had in his possession."

The prosecutor also mentioned the last paragraph of the Count One elements instruction (CALCRIM No. 2300): "The interesting part is that the law says that while Mr. Martin needs to know of the substance's nature, he doesn't actually have to possess it or have to hold it. It's enough that he has the right to control it. *Now, really that doesn't apply in some senses to this case because Martin took it out of his pocket and gave it to Mr. Rodriguez.* But it is a good reminder that the law sometimes has common sense and

6

can acknowledge *that people work in teams to sell drugs sometimes*, just as the detective told you earlier today." (Italics added.)

The prosecutor then discussed Blue's participation in the crime, and argued the evidence negated any theory that Blue was the actual seller, noting that during the videotaped interview "[Rodriguez] was very clear that [defendant] sold to him," despite being "confronted multiple times with the notion that it was actually . . . Blue." She also said that although Blue "absolutely helped" with the sales transaction by "facilitat[ing]" a buyer and "act[ing] as a lookout," Blue's participation as a lookout did not lessen Martin's responsibility for the sales crime and the jury should focus solely on the case against Martin and not speculate about Blue's criminal responsibility. The prosecutor concluded that "all of the evidence points out that Mr. Martin is guilty of selling opportunistically that little bag of coke to Mr. Rodriguez, and I ask you to find him guilty of both counts."

At the outset of her responsive argument, defense counsel highlighted Rodriguez's initial statements during his police interview that it was Blue who sold him the drugs:

> "This case started with one individual . . . Rodriguez. It started with the fact that he went down to the police station . . . [and] . . . at the slip of a moment he started to say . . . Blue was the person that sold him drugs, he flipped it and he turned around and he said [defendant was the person] that sold [the drugs to him]. . . . And so we're here based on the one accusing finger of a criminal, a criminal who everybody that has come into this court and talked about told you he's a liar."

After continuing to question the reliability of Rodriguez's statements that he bought the drugs from Martin (as opposed to Blue), defense counsel noted that Detective Fortier acknowledged "he didn't actually see what happened inside the vehicle." Defense

7

counsel also questioned why the men would have come outside of the house to engage in the drug deal in a car (a more public venue than a home).  Defense counsel additionally argued it was possible that Rodriguez already had drugs in his pocket, noting that there was "zero evidence" that Martin used any drugs, possessed any drugs, or had any "indicia" of sales in his car.

*Jury Deliberations*

Shortly after the jury began deliberating, it sent a note asking for "Clarification on Count 1" and referred to the last paragraph of CALRCIM No. 2300.  The exact wording of the note was:

> " 'A person does not have to actually hold or touch something to (sell/furnish/administer/transport for sale . . . ).  It is enough if the person has (control over it) or the right to control it), either personally or through another person.' [¶] In this statement what is considered 'control'  Is that ownership of the substance?  Control of the environment or situation ie drug deal going on?"

The court gave the following response:

> "Look at Instruction 200, page # 2.[2]
>
> "Some words or phrases used during trial have legal meanings that are different from their meanings in everyday use.  These words and phrases will be specifically defined in these instructions.  Please be sure to listen carefully and follow the definitions that I give you.  Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings.

---

2    Page 2 of Instruction No. 200 contained the "words or phrases" instruction, and also contained the admonition that "Some of these instructions may not apply depending on your findings about the facts of the case."

8

"The former edition of the jury instructions, CALJIC 12.00 framed things in a different way.

" 'Actual possession' requires that a person knowingly exercise direct physical control over a thing.

" 'Constructive possession' does not require actual possession but does require that a person knowingly exercise control over or the right to control a thing, either directly or through another person or persons.

"One person may have possession alone, or two or more persons together may share actual or constructive possession."[3]

Later that day, the jury wrote a note asking for "Clarification of Count 2":

"What is 'possession'? On one's own body? If you come into my house with cocaine am I now in possession of it because it's in my house?"

The court gave the following written answer to the jury:

"Answer: Look at the elements of Instruction #2302

"1. Defendant possessed a controlled substance

"2. Defendant knew of its presence

"3. Defendant knew of the substance's nature or character as a controlled substance. . . . [¶] . . . [¶]

"Two or more people may possess something at the same time.

"A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person.

"Also, look at Instruction 200, page # 2.

"Some words or phrases used during trial have legal meanings that are different from their meanings in everyday use. These words and

---

3    The discussion before the court gave this response is not on the record before us, but the court later noted that defense counsel had agreed with this response.

phrases will be specifically defined in these instructions. Please be sure to listen carefully and follow the definitions that I give you. Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings.

"The former edition of the jury instructions, CALJIC 12.00 framed things in a different way.

" 'Actual possession' requires that a person knowingly exercise direct physical control over a thing.

" 'Constructive possession' does not require actual possession but does require that a person knowingly exercise control over or the right to control a thing, either directly or through another person or persons.

"One person may have possession alone, or two or more persons together may share actual or constructive possession."

When the court proposed this response, defense counsel expressed concern about referring to the former CALJIC instruction, but the court overruled the objection, stating "I don't think we're harming" the jury by adding the CALJIC definition because it "gives [the jury] a little additional guidance."

Later that day, the jury informed the court it had reached a verdict on Count 1, but not on Count 2. The court then sent the jurors back for additional deliberations to see if they could break the deadlock on Count 2. After resumed jury deliberations, the jury sent the court a third note, asking:

> "Please clarify when considering Count Two: 'constructive' possession simply means the defendant knew the presence of controlled substance [¶] or [¶] 'Constructive' possession for sale or intended sale together."

The court and counsel agreed that this question was confusing. With counsel's agreement, the court responded to the jury as follows:

10

"Constructive possession is more than mere knowledge of the presence of the substance.

"Possession of a controlled substance for sale is established by proof that the defendant possessed a controlled substance for the purpose of selling it. The offense includes all the elements of simple possession, with the additional element of a specific intent to sell the controlled substance. *(People v. Newman* (1971) 5 Cal.3d 48, 52.)

"As with simple possession:

"The elements of possession of narcotics are physical or constructive possession thereof coupled with knowledge of the presence and narcotic character of the drug. Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another. The elements of unlawful possession may be established by circumstantial evidence and any reasonable inferences drawn from such evidence."

After brief continued deliberations, the jury notified the court it had reached a verdict on Count 1, but was still deadlocked on Count 2. The court then declared a mistrial on Count 2, and the jury delivered a guilty verdict on Count 1.

## DISCUSSION

Martin's sole appellate contention is that the court erred in instructing the jury on Count 1 with the final paragraph of CALCRIM 2300. The final paragraph stated: "A person does not have to actually hold or touch something to sell, furnish, administer, transport it for sale, import, give it away. It is enough if the person has control over it or the right to control it, either personally or through another person."

Martin does not challenge that this instruction correctly states the law applicable to criminal liability for selling a controlled substance under section 11352. But he argues

11

the court erred in giving this instruction because there was no evidence that *if* he sold the drugs to Rodriguez, that he did not hold or touch the drugs and/or the baggie containing the drugs. He notes that the prosecutor's sole theory was that this transaction occurred when he was alone in the car with Rodriguez, and Rodriguez stated during the videotaped interview that Martin took the drugs out of his pocket and handed it to him while they were in the car. Thus, Martin argues the instruction had no application to the facts of this case.

It is error to give an instruction that correctly states the law but has no application to the facts of the case. (See *People v. Debose* (2014) 59 Cal.4th 177, 205; *People v. Cross* (2008) 45 Cal.4th 58, 67 (*Cross*); *People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) The test is whether the instruction is "supported by substantial evidence, that is, evidence sufficient to deserve jury consideration." (*People v. Marshall* (1997) 15 Cal.4th 1, 39-40.)

The Attorney General argues the instruction was applicable because Detective Fourier did not see the actual sale (he could not see what was happening in the car), and therefore the instruction was relevant to inform the jury that the prosecution did not need to prove Martin actually handled the drugs (holding or touching them) to prove he "sold' the drugs to Rodriguez, as long as the prosecution proved the defendant had "control" over the drugs.

Although this explanation is somewhat of a stretch, the court did not prejudicially err in giving this portion of the instruction. First, Martin never objected to the instruction, and therefore any challenge is forfeited. Had defendant objected to this

12

optional paragraph of CALCRIM No. 2300, the court and parties could have discussed whether it was necessary and determined whether there were sufficient grounds to give it. Contrary to Martin's contention, the court did not have a sua sponte duty to "fix" an instruction that in hindsight appears inapplicable to the factual circumstances. When the court gave the instruction, it had not yet heard counsel's closing arguments and was not aware of the prosecutor's precise theories for establishing Martin's guilt. Martin does not cite any relevant authority imposing an affirmative duty on the court to strike a paragraph of an instruction under these circumstances.

Second, even if not forfeited, the instruction itself was not prejudicial. Generally, giving an irrelevant or inapplicable instruction is " ' "only a technical error which does not constitute ground for reversal." ' " (*Cross*, *supra*, 45 Cal.4th at p. 67.) This is because we are required to assume the jury disregarded factually inapplicable instructions. The court specifically instructed the jury that "Some of these instructions may not apply. Do not assume because I give a particular instruction that I'm suggesting anything about the facts. *After* you have decided what the facts are, follow the instructions that do apply to the facts as you find them." (Italics added.)

Based on this instruction, if Martin is correct that the undisputed facts showed that *if* he sold the drugs he necessarily would have touched or handled the drugs, the jury would not have applied this instruction. During her argument, the prosecutor underscored this point, specifically noting that this "touch or held" paragraph did not "apply" to this case "because Martin took it out of his pocket and gave it to Mr. Rodriguez."

13

Martin argues the jury question asking whether "control" in the Count 1 instruction refers to "ownership of the substance" or to the "drug deal going on," shows the jury was confused by the "hold or touch" instruction. Based on this question, Martin posits that at least one juror may have believed the instruction meant he could be found guilty for the Count One sales offense even if his participation in the drug transaction was solely "as a lookout" (the person standing outside the vehicle). He emphasizes the evidence supporting his counsel's arguments that it was Blue (and not him) who actually entered Rodriguez's vehicle.

We agree there was at least some evidence that Martin (rather than Blue) was the person acting as a lookout. But we are fully satisfied that the jury would not have mistakenly believed based on the "hold or touch" instruction that it could convict Martin of the drug sale offense if this was Martin's only role in the transaction.

The prosecutor made clear that her sole theory was that Martin participated in the actual sale while in the car with Rodriguez. She argued vigorously that the jury should reject any notion that Martin was not in the car, and never stated or suggested that it could find him guilty if it did not find the prosecution proved this fact. Additionally, the challenged CALCRIM No. 2300 paragraph did not state or suggest lookout-type activity was sufficient to satisfy the control element necessary to establish the defendant could be found guilty for selling the drugs, nor did the court's responses. Thus, to the extent the jury questions reflected some confusion on the issue, the confusion did not result from the instruction.

14

Moreover, the court's responses to the jury's questions clarified that although a defendant did not need to have "actual possession" of the drugs, he needed to "knowingly exercise control over or the right to control *a thing*, either directly or through another person or persons." (Italics added.) This clarified that the "control" requirement related to the drugs and not to the overall drug deal. In any event, there was *no evidence in this case*, that if Blue was the person who gave the drugs to Rodriguez in the car, that Martin somehow had control over this transaction. Without more, a person who serves solely as a lookout would not have the requisite control over the drugs to be guilty as a principal, and the instructions would not have misled the jury on this issue.

Martin argues the challenged paragraph "lessened the prosecution's burden of proof" by allowing the jury to convict him on an aiding and abetting theory without instructing on that ground. The argument is factually unsupported. The prosecution did not rely on an aiding and abetting theory, nor did the challenged paragraph or the court's responses to the jury's questions support a conviction on such basis. On the record before us, the jury could not have found Martin guilty without finding he was the person who gave the drugs to Rodriguez in the vehicle.

Moreover, to the extent Martin argues the court erred in failing to give instructions sua sponte on aiding and abetting in response to the jury's questions, defense counsel did not ask for these instructions, and such instructions would have benefited the prosecution, not the defense. Aider and abettor liability is vicarious in the sense the aider and abettor is fully liable for another's actions as well as his own. (See *People v. McCoy* (2001) 25 Cal.4th 1111, 1118.) Thus, the giving of aiding and abetting instructions in response to

15

the jury's questions would have assisted the prosecution by broadening the possibility of a conviction. The prosecution did not seek Martin's conviction as an aider and abettor, and the court was not required to sua sponte instruct on this theory.

To the extent Martin is challenging the propriety of the court's responses to the court's questions, the argument is forfeited as the record reflects defense counsel expressed agreement with the court's response pertaining to Count One. (*People v. Rogers* (2006) 39 Cal.4th 826, 877.) Further, on our review of the court's responses, we are satisfied the gist of the responses were consistent with applicable law and did not prejudice Martin's rights, even though the answers were not the model of clarity and could have been better worded. Martin argues that the responses improperly inserted the concept of "possession" into the Count 1 offense, noting that possession is not technically an element of this crime. (See *People v. Murphy* (2007) 154 Cal.App.4th 979, 984; *People v. Peregrina-Larios* (1994) 22 Cal.App.4th 1522, 1524.) However, as many courts have noted, in practical effect, "[n]o sale of narcotics is possible without possession, actual or constructive." (*People v. Rosales* (1964) 226 Cal.App.2d 588, 592; accord *People v. Walker* (1959) 170 Cal.App.2d 159, 165 ["[narcotics] sale, under ordinary circumstances, includes the element of possession, constructive or actual"].) In the context of the Count 1 sale offense in this case, possession (actual or constructive) was equivalent to the "control" concept on which the jury was instructed. (See *People v. Francis* (1969) 71 Cal.2d 66, 71 [" '[t]he accused has constructive possession when he maintains control or a right to control the contraband' "].) The court's responses to the jury's question properly reflected this concept.

16

## DISPOSITION

Judgment affirmed.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

O'ROURKE, J.